UNITED STATES *v.* SUSSFELD, LORSCH & CO. (No. 1695).[1]

PEDOMETERS, HOW DUTIABLE—NOT EJUSDEM GENERIS WITH ARTICLES NAMED IN THIRD CLAUSE, PARAGRAPH 356, TARIFF ACT OF 1913.

Pedometers having a catch by which they are attached to the vest pocket, used principally by practical people for utilitarian purposes, are not like the articles named in the third clause of paragraph 356, tariff act of 1913.   They are not dutiable under paragraph 356, but are dutiable as metal articles not specially provided for under paragraph 167.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, Abstract 39343.

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for the appellees.

[Oral argument May 18, 1916, by Mr. Lawrence and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in this case consists of pedometers assessed for duty under paragraph 356 of the act of 1913, claimed to be dutiable at 20 per cent ad valorem under paragraph 167 of the same act.

---

[1] Reported in T. D. 36454 (30 Treas. Dec., 932).

The board sustained the protest making such claim, and the Government appeals.

The pertinent provisions of paragraph 356, which the Government invokes, read as follows:

\* \* \* Articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof finished or partly finished composed of metal, \* \* \*.

The provisions of paragraph 167 are as follows:

Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

The record shows that the pedometers in question are instruments resembling watches, having a little catch attached by which they are fastened to the vest pocket. They are used to indicate the distance walked by the person carrying them. The testimony shows that they are used principally by the employees of railroad or telephone companies in laying out posts or by land companies in measuring plots of land. It is shown that the jar of the step operates the recording mechanism. The retail price ranges from $2.50 to $6. It is shown that the larger proportion of this merchandise is used by practical people for utilitarian purposes in measuring the distance walked.

It is urged by the importers, and this view appears to have been adopted by the board, that these pedometers are not, under the rule of *ejusdem generis*, such as or like the articles *eo nomine* named in paragraph 356. We think no error was committed in adopting this view.

The question of the application of the *ejusdem generis* rule was fully considered by the court in Gallagher & Ascher *et al. v.* United States (6 Ct. Cust. Appls., 105; T. D. 35343), which considered "prorepel" lead pencils. In that case the court, speaking through Martin, Judge, said:

The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they

are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision.  * * *

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse.  Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons."  In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection, like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment.

The articles here involved are not articles which in any proper sense can be termed articles of mere personal comfort, convenience, or adornment.   They are vocational instruments and not "such as" or "like" the articles enumerated.

The suggestion made at the argument that these articles might be treated as surveyors' instruments is without merit.

The suggestion was also made at the hearing that the evidence failed to show that these articles were not plated with gold or silver. Apparently the board, who examined the samples, saw no reason to suspect that they were so plated, and we discover nothing in the appearance of the articles which leads us to doubt the correctness of the board's conclusion in that respect.

The decision of the board is *affirmed*.