(C. D. 1871)

R. J. Saunders & Co., Inc. v. United States

United States Customs Court, First Division

(Decided April 17, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: The merchandise the subject of these protests consists of keyrings. As they appear before us in evidence, by representation of the imported articles, exhibit 1 consists of a snap keyring only, while exhibit 2 consists of a snap keyring, to which a miniature auto emblem is attached by a short length of chain. Both items were assessed with duty at the rate of 65 per centum ad valorem under the provision in paragraph 1527 (c) (2) of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802 and T. D. 51898, for—

Articles valued over 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof * * *, finished or unfinished: * * * Composed wholly or in chief value of metal other than gold or platinum * * * Valued at not

above $5 per dozen pieces or parts: * * * Other [than certain specified articles and parts] * * *.

They are claimed to be entitled to classification under the provision in paragraph 397 of the same act, as modified by T. D. 51802, for—

Articles or wares not specially provided for, whether partly or wholly manufactured * * * Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer: * * * Other [than certain named articles] * * * 22½% ad val.

The case has been submitted for decision upon a stipulation of counsel to the effect—

(1) that the articles in issue are composed of base metal, not plated with platinum, gold, or silver, and not colored with gold lacquer;

(2) that exhibit 1 is a type of keyring used to retain keys and that the ring on exhibit 2 is also used to retain keys;

(3) that both exhibits 1 and 2 are designed to be carried on or about the person, that is, in the pocket or in ladies' handbags, and are so carried (and, in so stipulating, counsel for the plaintiff specifically pointed out that he was not to be understood as conceding that the articles at bar are such as or similar to the exemplars enumerated in the paragraph), and

(4) that the articles are worth over 20 cents per dozen pieces.

Plaintiff relies upon the decision of our appellate court in the case of *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66, T. D. 40885, as dispositive of the issue.. That case involved keyrings described as "heavy steel key rings attached to steel snap hooks having leather loops," and it was held by the court that such keyrings were not classifiable under the provisions of paragraph 1428 of the Tariff Act of 1922, the predecessor, in substantially the same language, of paragraph 1527 (c) (2), of the present act, *supra*.

In reaching its conclusion in that case, the court made two findings: (1) That steel keyrings are not specially designed to be carried on or about the person, and (2) that steel keyrings are not like the exemplars named in paragraph 1428, Tariff Act of 1922, which are substantially the same as those named in paragraph 1527 (c) (2) of the Tariff Act of 1930.

In developing the first finding, the court, speaking through Judge Smith, pointed out that even though keyrings were *suitable* to be carried on or about or attached to the person, they were not *designed* or made for that purpose, presumably meaning that their use partook of the character and nature of the keys which were held on them and which were used, not when carried on or about or attached to the person, but in opening and closing locks away from the person. Also, it would appear that the design and use of keyrings to hold keys exists whether or not the rings are carried on or about the person, so

that it cannot be said that they were primarily designed to be carried on or about or attached to the person; they were primarily designed to retain keys, wherever they might be. There is no feature about them which, in any way, connects them to carriage on or about or attached to the person, as was the case of the key chains covered by the case of *United States* v. *Kastor & Bros.*, 15 Ct. Cust. Appls. 118, T. D. 42191, which had a piece of leather, with a buttonhole cut in it, permanently attached to the chain.

In the case at bar, counsel for the plaintiff joined in a stipulation to the effect that the articles at bar were designed to be carried on or about the person. As has been said, the samples, themselves, bear no evidence of such design, and, if the finding of our appellate court in the *Kress* case that keyrings are suitable, but not designed, to be carried on or about the person be considered to be matter of law, it would seem that the present plaintiff, by joining in the stipulation of fact mentioned, could not disable itself from relying upon the appellate court's holding in the *Kress* case.

However, our appellate court did not rest its decision in the *Kress* case alone on that ground, but also held that keyrings are not like the exemplars named in the paragraph.

There are four factors which must affirmatively coincide, in order to classify articles under paragraph 1527 (c) (2), *supra*. The articles must—

(1) be valued above 20 cents per dozen pieces,

(2) be designed to be worn on apparel or carried on or about or attached to the person,

(3) be such as the 25 named exemplars, and

(4) be composed wholly or in chief value of, or set with, certain materials.

The determination of each of these factors is a point within the issues of any case arising under paragraph 1527 (c) (2), *supra*. Assuming that the plaintiff in this case, by joining in the stipulation that the keyrings at bar were "designed to be carried on or about the person, that is, in the pocket or in ladies' handbags" may have impaired its claim under the first ground stated by our appellate court in the *Kress* case it is, nevertheless, entitled to rely upon the second ground as representing the law in the matter.

The court based its ruling in the *Kress* case on two grounds, and each is valid as the judgment of the court, and neither may be treated as *obiter dictum*. The law on this point is succinctly set forth in the following expression of the Supreme Court of the United States in the case of *United States* v. *Title Insurance & Trust Company et al.*, 265 U. S. 472, 486:

* * * But it is urged that what we have described as ruled there was *obiter dictum* and should be disregarded, because the Court there gave a second ground

for its decision which was broad enough to sustain it independently of the first ground. The premise of the contention is right but the conclusion is wrong; for where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, "the ruling on neither is *obiter*, but each is the judgment of the court and of equal validity with the other." *Union Pacific R. R. Co.* v. *Mason City & Fort Dodge R. R. Co.*, 199 U. S. 160, 166; *Railroad Companies* v. *Schutte*, 103 U. S. 118, 143.

If the decision of our appellate court in the *Kress* case, *supra*, that keyrings are not like any of the exemplars named in paragraph 1527 (c) (2) be considered to be matter of law, the instant keyrings must be excluded from classification under the paragraph. If, however, the decision on that ground be considered to be matter of fact, then, the instant keyrings must be tested by the principle laid down in the case of *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, that the named exemplars have in common the characteristic of being "incidental articles of mere personal comfort, convenience, or adornment."

It is clear from their use that the articles at bar serve no purpose of adornment, that is to say, in their carriage about the person, they are concealed in the pocket or handbag and do not adorn either the apparel or the person of the carrier, as would the buckles, buttons, ornaments, etc., provided for. Nor do they afford comfort to the carrier, as do the cigar and cigarette holders, etc., named as exemplars. If they are within the paragraph at all, it would be because of the fact that they are incidental articles of mere personal convenience. But the convenience they offer to the carrier is not connected with any design of carriage on or about the person. The convenience is in retaining or holding keys together, a purpose which is served at all times and in all places, and not merely when carried on or about the person. For these reasons, we believe the involved keyrings are not within the purview of paragraph 1527 (c) (2), *supra*, and, it having been established that they are within the designation by composition contained in paragraph 397, *supra*, the protest claim in each case for classification thereunder will be sustained.

Judgment will issue accordingly.

DISSENTING OPINION

Oliver, Chief Judge: This opinion was originally prepared as the opinion of the court, but, in view of the position taken by my learned colleagues, my views are now filed as a dissenting opinion.

There is no dispute as to the facts. Counsel for the respective parties submitted the case on an agreed set of facts, showing that the articles in question (plaintiff's exhibit 1 and plaintiff's exhibit 2) are keyrings used to retain or hold keys, that they are "designed to be carried on or about the person, that is, in the pocket or in ladies' hand-

bags" (R. 4); that they are "composed of base metal, not plated with platinum, gold or silver, and not colored with gold lacquer" (R. 3); and that they are "worth over 20 cents a dozen" (R. 5). Samples of the articles in question support the stipulated facts. Two different keyrings are under consideration. Both are composed of very light metal. One is plain, about 1 inch in diameter (exhibit 1, *supra*); the other is the same ring, with an automobile emblem attached thereto by means of a piece of chain (exhibit 2, *supra*).

Since it is conceded that these keyrings are "designed to be carried on or about the person," the sole question for determination is whether they are "like articles" to the enumerated exemplars contemplated by the provision in paragraph 1527 (c) of the Tariff Act of 1930, reading as follows:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles * * *.

The foregoing provision of paragraph 1527 (c), *supra*, invoked herein by the collector, has been the subject of much customs litigation arising under the Tariff Act of 1930, as well as under prior tariff acts. Judicial interpretation thereof is very comprehensively set forth in two leading cases, i. e., *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, which arose under the Tariff Act of 1913 (paragraph 356), and *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, that arose under the Tariff Act of 1922 (paragraph 1428). In the *Gallagher & Ascher et al.* case, *supra*, the court, referring to the provision for articles "designed ton be worn on apparel or carried on or about or attached to the perso ," stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. *The controlling question in this provision*, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. *On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision.* The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined. [Italics supplied.]

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly

ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

In the *Horstmann Co.* case, *supra,* the late Judge Hatfield, speaking for our appellate court, referred to several earlier cases, including the *Gallagher & Ascher et al.* case, and then stated as follows:

> It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental articles of mere personal comfort, convenience, or adornment."* [Italics not quoted.] Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

> It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* [Italics not quoted.] If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

The statutory construction laid down in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, *supra,* was completely affirmed by the appellate court in its very recent decision in *United States* v. *Astra Trading Corp.,* 44 C. C. P. A. (Customs) 8, C. A. D. 627 (decided November 30, 1956).

Under the statutory construction invoked in the cited authorities, the keyrings in question are within the purview of the provision in paragraph 1527 (c), *supra.* The three cases, hereinabove referred to, support the proposition that the rule of *ejusdem generis* has application to the said paragraph 1527 (c) when nonenumerated articles are, like the enumerated exemplars, designed to be carried on or about the person of the user, not for warmth or protection, like clothing, but as incidental articles of mere personal comfort, convenience, or adornment. The principle applies herein. In this connection, it will be observed that among the enumerated exemplars in paragraph 1527

(c) are cigarette cases, match boxes, and coin holders, all of which are containers that serve as a personal convenience to the user in carrying several of a specific kind of articles. The keyrings under consideration, which are admittedly designed to be carried on or about the person, are, in their customary use of holding keys, like the named exemplars that are indicative of the classes of articles contemplated by the generic provision for articles, designed to be worn on apparel or carried on or about or attached to the person. The reasoning is very aptly expressed in defendant's brief as follows:

> * * * It should be noted that it is no more uncomfortable or inconvenient to carry a key ring or key chain than it is to carry any of the other specified exemplars in paragraph 1527 (c), such as cigar cases, cigar lighters, cigarette cases, combs, match boxes, coin holders, powder cases, vanity cases, and other like articles. It is most convenient to carry absolutely nothing. These articles are carried because they are convenient for personal use, not because it is comfortable to fill one's pocket with these various objects. * * * Therefore, the comfort and convenience of having keys available when needed by carrying them on or about the person is the same personal comfort and convenience secured from carrying the other named exemplars and like articles in paragraph 1527 (c), *supra*.

The case of *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66, T. D. 40885, upon which plaintiff relies, does not apply herein. There, the merchandise under consideration consisted of "heavy steel key rings attached to steel snap hooks having leather loops," which the court found to be "suitable to be carried on or about the person, but they were not designed or made for that purpose." In excluding those keyrings from classification under the provision for "articles * * * designed to be worn on apparel or carried on or about or attached to the person" in paragraph 1428 of the Tariff Act of 1922, under which the case arose, and holding them to be dutiable as manufactures of metal under paragraph 399 of the same act, the court stated:

> *The key rings involved in this case* are suitable to be carried on or about the person, but they were not designed or made for that purpose. Moreover, they are not like buckles, cardcases, chains, cigar cases, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags, mesh purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, or vanity cases. Key rings are therefore not of the class or kind of articles which the paragraph names and makes determinative of classification. * * * [Italics supplied.]

In the foregoing quotation, the court's finding that the keyrings "were not designed" to be carried on or about the person was dispositive of the issue and definitely excluded the merchandise from the provision for articles "designed to be worn on apparel or carried on or about or attached to the person." The court's comment concerning keyrings and named exemplars in the statute was unnecessary to the decision, and was, therefore, *obiter dictum*. In *Union Pacific Railroad*

*Company* v. *Mason City & Fort Dodge Railroad Company*, 199 U. S. 160, that is cited with approval in *United States* v. *Title Insurance & Trust Company et al.*, 265 U. S. 472, which is quoted in the majority opinion, in discussing *obiter dictum*, there is stated the following:

\* \* \* Of course, where there are two grounds, upon either of which the judgment of the trial court can be rested, and the appellate court sustains both, the ruling on neither is *obiter* but each is the judgment of the court and of equal validity with the other. Whenever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in no just sense, be called mere dictum.

The condition referred to in the foregoing quotation did not exist in the *Kress & Co.* case, *supra*, where a specific issue was presented, i. e., whether certain large metal keyrings were articles, designed to be carried on or about the person, or whether they were more properly classifiable under the residuary provision for manufactures of metal, not specially provided for. When the court disposed of that precise question, as it did, in stating that the keyrings "were not designed or made" to be carried on or about the person, a decision on the ultimate issue was rendered and nothing further needed to be said. Hence, the court's comparison of keyrings with the enumerated exemplars, being *obiter dictum*, is not a precedent for determining the issue herein.

Continuing further with a review of the *Kress & Co.* case, *supra*—but adhering to my view concerning the *dicta* therein—it would seem reasonable to assume that the appellate court did not intend its decision in that case to remove from the provision of paragraph 1527 (c), *supra*, all keyrings, including those involved herein, which are concededly *designed* to be carried on or about the person, and which, by their general appearance, are intended to serve the user as articles of personal convenience. Such a construction would be inconsistent with the views of our appellate court, as expressed in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, *supra*, which were so recently affirmed in the *Astra Trading Corp.* case, *supra*. I prefer to construe the appellate court's decision in the *Kress & Co.* case, *supra*, as referring specifically to the "heavy steel key rings" there under consideration and to articles of like construction, such as "large metal coin holders, combs, match boxes, chains, and cigar cutters which might be carried on or about or attached to the person, but are unsuitable to be so carried as articles of *personal* comfort or convenience" [italics quoted], that are mentioned in the course of that decision.

Classification of keyrings as articles, designed to be carried on or about the person, under the provisions of paragraph 1527 (c), *supra*, has been sustained by this court. In *The Carbone Corp.* v. *United States*, 29 Cust. Ct. 422, Abstract 56991, the merchandise was some-

what similar to the articles involved herein. There, as here, the keyrings were composed of light metal and were very small in size. In *Hill Novelties Mfg. Corp.* v. *United States*, 36 Cust. Ct. 307, Abstract 59619, the merchandise consisted of a metal screw that was made according to specifications for a particular keyring, which was held to be within the class of articles contemplated by paragraph 1527 (c), *supra*. Neither of these decisions was appealed.

It is my opinion that the particular keyrings now before us are the type of article intended by Congress to be properly classifiable under the provision for articles, designed to be carried on or about the person, and dutiable at the rate of 65 per centum ad valorem under paragraph 1527 (c) (2), as modified, as assessed by the collector.

The protests should be overruled.